# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————————

Case No. 5D2025-0272
LT Case No. 2017-CA-051569

———————————————————

NORTHWEST BAPTIST CHURCH OF
COCOA, INC., BREVARD BAPTIST
ASSOCIATION, INC., and
SURFSIDE COMMUNITY
FELLOWSHIP, INC.,

     Appellants,

     v.

TRUSTEE CORPORATION OF THE
KING STREET BAPTIST CHURCH,
INC.,

     Appellee.

———————————————————

On appeal from the Circuit Court for Brevard County.
Michelle L. Naberhaus, Judge.

Michael S. Minot, of Minot Law, P.A., Cocoa, for Appellants.

Eric L. Hostetler and Scott D. Widerman, of Widerman Malek,
PL, Melbourne, for Appellee.

July 31, 2026

SOUD, J.

In this litigation over ownership and possession of property on which a Baptist church is to conduct its ministry, Appellants Northwest Baptist Church of Cocoa, Inc., Brevard Baptist Association, Inc., and Surfside Community Fellowship, Inc. appeal the trial court's summary judgment in favor of Appellee Trustee Corporation of the King Street Baptist Church, Inc.[1] We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b). We reverse because King Street Baptist lacked standing to bring the case.

I.

The material facts in the record before us are largely undisputed. At issue here is the ownership of a certain parcel of real property in Brevard County, Florida. A brief description of the title history to this land is necessary to our resolution of this case.

In October 1989, Doyle and Alma Carlton transferred by warranty deed a fee simple interest in the subject property to King Street Baptist. The deed contained a "reverter clause" that required the property be:

> for the use of a new missionary Baptist Church on Cox Road and benefit of those of the membership, even though they may be a minority, who adhere to, maintain and propagate the doctrines, faith and practices of the missionary Baptist churches which cooperate with the Florida Baptist Convention and the Southern Baptist Convention.

---

[1] This is the second time these parties come before this Court in the nearly nine-year-long dispute. *See Tr. Corp. of King St. Baptist Church, Inc. v. Nw. Baptist Church of Cocoa, Inc.*, 357 So. 3d 733 (Fla. 5th DCA 2022) (reversing the trial court's dismissal of King Street Baptist's case based upon the allegations within the four corners of the complaint and the deeds attached thereto). The case is now before us on Appellants' appeal of the summary judgment entered below in favor of King Street Baptist. The time for resolution has come.

Failure of the membership of the church, even if a majority of the membership, to operate a church within these defined parameters "shall constitute such a deviation from the accepted usages, practices and beliefs of Baptists, that said majority shall no longer constitute the true congregation of said church . . . ." In such an occurrence, title to the subject property "shall vest in, and be held for, the use and benefit of the minority" members who continue adherence to the Baptist faith as the deed's clause describes.

The "reverter clause" further provides that if the entire membership of King Street Baptist fails to operate a Baptist church as required, "the title to the above-described property shall revest to and become vested in Brevard Baptist Association, Inc." for the same purpose. If the Brevard Baptist Association ceased to exist or failed to adhere to the required Baptist faith, "then the title to the above-described property shall revest to and become vested in the Florida Baptist Convention, or its successor, to be used for church and mission purposes."

Nearly eight years later, in May 1997, King Street Baptist deeded the property to Northwest Baptist Church. The deed contained a substantially identical "reverter clause." Importantly, the clause made no provision for transfer of the property back to King Street Baptist if Northwest Baptist Church ceased adherence to the doctrines and faith of missionary Baptist churches in cooperation with the Florida and Southern Baptist conventions or upon occurrence of any other condition precedent.

Years later, Northwest Baptist Church experienced declining membership and resulting financial hardships. To address the problem, the church called a special business meeting. Ultimately, a majority of members in attendance at the meeting elected to dissolve Northwest Baptist Church.

As a result, Northwest Baptist Church executed a quitclaim deed in October 2017, transferring to Brevard Baptist Association "all of [Northwest Baptist Church's] right, title, interest, claim or demand, if any, which the Grantor may have in the" subject property. There is no express reversion provision in this quitclaim deed.

3

Eleven days later, Brevard Baptist Association executed a quitclaim deed transferring title to the subject property to Surfside Community Fellowship. This deed contained a requirement that if Surfside Community Fellowship ceased to exist or ceased cooperation with Brevard Baptist Association, then title to the property "shall revert to the Brevard Baptist Association, Inc." Again, there is no reversion back to King Street Baptist contemplated in this deed.

A month later, in November 2017, King Street Baptist filed its initial complaint seeking to void the quitclaim deeds to both Brevard Baptist Association and Surfside Community Fellowship and establish King Street Baptist's ownership and possession of the property. Its claims were based on the "reverter clause" in its 1997 warranty deed transferring the property to Northwest Baptist Church. After amendments to this initial complaint, in 2020 the trial court dismissed without prejudice King Street Baptist's second amended complaint, concluding that King Street Baptist lacked standing.

In response, King Street Baptist filed its Third Amended Complaint. For the first time, in addition to the purported standing afforded by the deed granting the property to Northwest Baptist Church, King Street Baptist alleged standing based upon assignments of interest from seventeen "minority members" of Northwest Baptist Church who purportedly did not deviate from the Baptist faith as contemplated by the King Street Baptist warranty deed to Northwest Baptist Church. Each of the assignments of interest are dated in April 2020, nearly two and a half years after King Street Baptist filed its initial complaint. Pertinent here, the trial court denied Northwest Baptist Church's motion to dismiss in part concluding, "[t]he assignments by seventeen minority church members confers [sic] standing on [King Street Baptist].

Ultimately, the parties filed various motions for summary judgment. After a hearing on the motions, the trial court granted summary judgment in favor of King Street Baptist, concluding that Northwest Baptist Church's failure to (i) provide sufficient notice of the meeting at which it was dissolved and (ii) conduct the business meeting in accordance with Robert's Rules of Order was

4

"fatal." Thus, because Northwest Baptist Church "was not properly dissolved," the trial court ruled the quitclaim deed from Northwest Baptist Church to Brevard Baptist Association and the subsequent quitclaim deed from Brevard Baptist Association to Surfside Community Fellowship were both void. As a result, "[t]he title to the church property . . . remains in [Northwest Baptist Church] and is now by virtue of the . . . assignments, assigned to [King Street Baptist]." The trial court ordered the clerk to issue a writ of possession for the property to King Street Baptist.

This appeal followed.

II.

We review de novo whether a party has standing to bring an action. *See Dixon v. Green*, 425 So. 3d 739, 743 (Fla. 5th DCA 2025).

One has standing to bring a suit when that party has a sufficient and legally cognizable interest in a justiciable controversy that will be affected by the outcome of the litigation. *See Roller v. Collins*, 373 So. 3d 35, 40 (Fla. 5th DCA 2023); *see also Nedeau v. Gallagher,* 851 So. 2d 214, 215 (Fla. 1st DCA 2003). The interest cannot be conjectural or merely hypothetical. *See Weiss v. Johansen*, 898 So. 2d 1009, 1011 (Fla. 4th DCA 2005) (citing *Nedeau*, 851 So. 2d at 215–16). Rather, the party claiming standing must have suffered or will suffer "a special injury." *See Wexler v. Lepore*, 878 So. 2d 1276, 1280 (Fla. 4th DCA 2004) (citing *Alachua County v. Scharps,* 855 So. 2d 195, 198 (Fla. 1st DCA 2003)).

Further, standing requires an equally important requirement. *See Roller*, 373 So. 3d at 40. The claim(s) brought by a would-be plaintiff must "be brought by or on behalf of one who is recognized in the law as a 'real party in interest,' that is, 'the person in whom rests, by substantive law, the claim sought to be enforced[.]'" *Id.* (alteration in original) (quoting *Kumar Corp. v. Nopal Lines, Ltd.,* 462 So. 2d 1178, 1183 (Fla. 3d DCA 1985)). "Standing is, in the final analysis, that sufficient interest in the outcome of litigation which will warrant the court's entertaining it." *Gen. Dev. Corp. v. Kirk*, 251 So. 2d 284, 286 (Fla. 2d DCA 1971).

5

A.

King Street Baptist argues here, as it has throughout the litigation, that it has standing to bring its lawsuit because of a claimed reversionary interest it has in the subject property. This assertion, which has been consistently disputed by Appellants, is without merit. And we need look no further than the warranty deeds transferring title to the property to reach this conclusion.

The Carltons originally transferred the property to King Street Baptist "for the use of a new missionary Baptist Church on Cox Road" that adheres to "the doctrines, faith and practices of the missionary Baptist churches which cooperate with the Florida Baptist Convention and the Southern Baptist Convention." This deed expressly provided that if a majority of the membership of that church strays from such usage "that said majority shall no longer constitute the *true congregation* of said church" and title to the property "shall vest in, and be held for, the use and benefit of the minority" members who continue adherence to the Baptist faith as required by the deed. If the whole of the membership failed to continue adhering to the Baptist faith, "the title to the above-described property shall revest to and become vested in Brevard Baptist Association, Inc." or, if the association no longer existed, to "the Florida Baptist Convention, or its successor, to be used for church and mission purposes."

Nearly eight years later, King Street Baptist transferred all interest to the property to Northwest Baptist Church. The warranty deed effectuating the transfer contained a substantially identical "reverter clause." If a majority of Northwest members failed to adhere to the Baptist faith, title would vest in the "true congregation" of the church. If the whole of the membership abandoned the Baptist faith and practice, then title would vest in the Brevard Baptist Association, or, if the association no longer existed, to the Florida Baptist Convention. There simply was no provision, upon the occurrence of any condition precedent, for the property to revert to King Street Baptist.

Thus, with this transfer of the property to Northwest Baptist Church, King Street Baptist lost all rights and legally cognizable interest in the subject property. In the end, King Street Baptist now is nothing more than a predecessor in interest of the subject

6

property—a predecessor who by the plain language of the deeds before us, retains no ownership, possessory, or reversionary interest whatsoever in the property at issue in the litigation. As a result, it is clear that the deeds wholly defeat King Street Baptist's claim of standing based thereon.

## B.

King Street Baptist also argues that it has standing because seventeen "minority members" of Northwest Baptist Church who have standing have assigned their interests to King Street Baptist. Here, too, the argument fails.

King Street Baptist's argument in this regard originates in its third amended complaint filed in April 2020, where the allegation of assignments first appeared. In support thereof, King Street Baptist later in the litigation provided written assignment of rights from seventeen minority members "irrevocably assign[ing], convey[ing], deliver[ing] and transfer[ring] to [King Street Baptist] (the "Assignee"), all right, title and interest that the Assignor has as a minority member of Northwest Baptist Church." Each assignment was dated in April 2020, nearly two and a half years after King Street Baptist filed its initial complaint.

These assignments are facially insufficient to grant standing to King Street Baptist to bring this case. Initially we note that the assignment from these minority members is not simply a condition precedent to maintain a suit asserting rights belonging to another. *See Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic*, 913 So. 2d 1281, 1285 (Fla. 2d DCA 2005). It is the very corpus by which a would-be plaintiff such as King Street Baptist is able to invoke the process of the court in the first instance. *See id.* ("Rather, [an assignment] is the basis of the claimant's standing to invoke the processes of the court in the first place."). And since on the date of the filing of the initial complaint in this case King Street Baptist had not been assigned the rights of the minority members of Northwest Baptist Church, King Street Baptist lacked standing to bring its claims. *See id.*

The doctrine of relation back, *see* Fla. R. Civ. P. 1.190(c), does not salvage King Street Baptist's standing argument. "This rule does not permit a party to establish the right to maintain an action

retroactively by acquiring standing to file a lawsuit after the fact." *See Progressive Exp. Ins. Co.*, 913 So. 2d at 1286. Thus, King Street Baptist was without standing when its initial complaint was filed. *See IDS Prop. Cas. Ins. Co. v. MSPA Claims 1, LLC*, 397 So. 3d 1075, 1079 (Fla. 3d DCA 2024) ("Moreover, a party's standing is determined at the time the lawsuit was filed. . . . [A] plaintiff's lack of standing at the inception of the case is not a defect that may be cured by the acquisition of standing after the case is filed. Thus, a party is not permitted to establish the right to maintain an action retroactively by acquiring standing to file a lawsuit after the fact." (internal quotation marks and citation omitted)).

C.

Further still, even if the assignments were found facially sufficient to grant to King Street Baptist all "right, title and interest" that each respective assignor "minority member" of Northwest Baptist Church may otherwise have, the ecclesiastical abstention doctrine would preclude our jurisdiction.

While our state courts' judicial authority over cases and controversies properly before them is profound, that power is cabined in litigation involving religious organizations by the ecclesiastical abstention doctrine. Finding its roots in the "structural barriers"[2] erected by the First Amendment of the United States Constitution, and the religious liberty clauses in Florida's Constitution, *see* Art. I, § 3, Fla. Const., this doctrine "precludes secular courts from exercising jurisdiction over ecclesiastical disputes, those about 'discipline, faith, internal organization, or ecclesiastical rule, custom, or law,' as distinguished from 'purely secular disputes between third parties and a particular defendant, albeit a religiously affiliated organization.'" *Napolitano v. St. Joseph Cath. Church*, 308 So. 3d 274, 277 (Fla. 5th DCA 2020) (quoting *Malicki v. Doe*, 814 So. 2d

---

[2] *Napolitano v. St. Joseph Cath. Church*, 308 So. 3d 274, 277 (Fla. 5th DCA 2020) (citing *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015) (holding that ministerial exception is "structural" protection, "one that categorically prohibits federal and state governments from becoming involved in religious leadership disputes.")).

347, 357 (Fla. 2002)). Secular courts' exclusion from disputes involving such matters reaches constitutional dimension and ensures that bodies of faith are afforded freedom and "an independence from secular control or manipulation—in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Id.* (citing *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952)).

The ecclesiastical abstention doctrine applies not only to those churches with a hierarchical form of government, but also to those, such as the Baptist churches present here, with an autonomous congregational structure.[3] In *McRaney v. North American Mission Board of the Southern Baptist Convention, Inc.*, 157 F.4th 627, 634–41 (5th Cir. 2025), *cert. denied*, 224 L. Ed. 2d 16 (Feb. 23, 2026), the Fifth Circuit traced in exquisite detail both the history and foundational underpinnings of the ecclesiastical abstention doctrine. The court there concluded that the bedrock constitutional "principle of denominational neutrality," *see id.* at 648 (quoting *Cath. Charities Bureau, Inc. v. Wis. Lab. & Indus. Rev. Comm'n*, 605 U.S. 238, 247 (2025)), extends to non-hierarchical churches and religious entities like Baptist churches, *see id.* at 648.[4] "The

---

[3] As recognized in *McRaney v. North American Mission Board of the Southern Baptist Convention, Inc.*, 157 F.4th 627, 631 (5th Cir. 2025), *cert. denied*, 224 L. Ed. 2d 16 (Feb. 23, 2026):

> Baptist ecclesiology is non-hierarchical, and each Baptist church is autonomous. Nevertheless, Baptist churches have long voluntarily cooperated in fellowship with one another and pooled resources for missions, evangelism, and church planting. It is common for cooperating Baptist organizations to have a shared confession of faith and doctrinal commitments. Each Baptist association and convention is itself autonomous and exercises no control over cooperating congregations.

[4] *See, e.g.*, *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 121–23 (3d Cir. 2018) (applying the doctrine to a Baptist church); *Garrick v. Moody Bible Inst.*, 95

freedom that radiates from [the ecclesiastical abstention doctrine] does not stop when it reaches a Baptist church. To the contrary, matters of faith and doctrine can be decided inside a church *regardless* of the denominational name that appears on its door." *Id*. And where the ecclesiastical abstention doctrine applies, its protections are complete, absolute, and of constitutional import.

Here, whether the seventeen assignors identified as minority members of Northwest Baptist Church possess any right or title to assign to King Street Baptist is dependent upon whether those assignors constitute the "true congregation" of Northwest Baptist Church. And whether these individuals comprise that "true congregation" is dependent upon a determination of whether they (or the majority members of the church) have continued to "adhere to, maintain and propagate the doctrines, faith and practices of the missionary Baptist churches which cooperate with the Florida Baptist Convention and the Southern Baptist Convention." As a result, our determination of the rights of the assigning minority members inherently requires the resolution of a doctrinal controversy. Such determinations are beyond our jurisdiction and would lead us to stray far beyond the constitutional borders drawn for secular courts. *See Napolitano*, 308 So. 3d at 278 ("recogniz[ing] the application of neutral legal principles in resolving church disputes is valid only if 'no issue of doctrinal controversy is involved.'" (quoting *Jones v. Wolf*, 443 U.S. 595, 605 (1979))).[5]

As a result, even if the assignments were determined facially sufficient to assign the rights and interests of the assigning minority members, whether those assigning members had any rights at all that could be assigned to King Street Baptist—and thereby grant it standing to bring the suit—is a matter Florida

---

F.4th 1104, 1112 (7th Cir. 2024) (stating that the doctrine would apply to an independent Bible college, before ruling on other grounds).

[5] In light of our conclusion that the ecclesiastical abstention doctrine precludes our review of standing based on the assignment of former members of Northwest Baptist Church, we need not consider the merits of any remaining arguments raised by King Street Baptist in its suit.

courts are without jurisdiction to determine under the ecclesiastical abstention doctrine.

### III.

Accordingly, because King Street Baptist lacked standing to being its claims, we REVERSE the summary judgment in its favor and REMAND with instructions that the trial court dismiss the action.

It is so ordered.

HARRIS, J., and BLOCKER, L.P., ASSOCIATE JUDGE, concur.

―――――――――――――――

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

―――――――――――――――